Oaruthers, J.,
delivered the opinion of the court.
This action was brought to recover damages for a serious injury sustained by the defendant in error, a passenger, from a collision with a cow which threw off the car in which he was riding.- The road was incomplete, and only used a part of the way from Hashville to Mur- *224 freesboro’ merely to facilitate the construction, of the road, by transporting the iron and other materials from the terminus at Eashville east, as they progressed with the work. But freight and passengers were received and carried for pay, regularly and without refusal.
Eo solicitation of passengers or public notice in the newspapers or by hand-bills had been made, except for Simdays, but rates of charge had been fixed, and none who applied to be carried were refused. The arrangement-for passengers were very indifferent, and partly of the road over which they run was in an unfinished state, so that the pilot or cow-catcher could not bo attached to the locomotive. This is regarded as a precaution almost indispensable in this country, and without which the danger of accidents like the one which occurred in this case is very imminent. The jury in consideration of all these facts presented in the proof, found a verdict in favor of the defendant in error, and assessed his damages at $5,000. It is not insisted that we can reverse for excessive damages, or upon the ground of a preponderance of evidence against the verdict, as there is proof to sustain it. .
It is becoming? more and more important every day that the duties and liabilities of common carriers, should be well understood by them and the public. The lives of citizens as well as their property, are committed to their keeping. The appalling disasters that are so frequently occurring, excites a general desire and expectation that the courts will hold them to that care and diligence, which the law prescribes for the safety and protection of all persons who extend to them their patronage. The rules on this subject are well defined *225 .and settled -with a view to the mutual advantage of the parties, j If they were not sufficiently rigid to guaranty safety to the citizen, the carrier would lose employment, and fail to make profit enough to authorize the great expenditure and hazards attendant upon his undertaking. So it is manifestly to his interest, as well as that of those who avail themselves of the facilities he affords for traveling and transportation, that the most perfect safety should he secured. But on the other hand, the rules, of accountability should he reasonable, that men may not be deterred from devoting their time, capital and energies to these very useful and now almost indispensable enterprises.
The law on this subject is wisely adapted to the accomplishment of those ends, and the promotion of the best interests of all concerned. It is laid down correctly, as we think, by his Honor the circuit judge, in his charge to the jury in this case. He says, in substance, “ a common carrier of passengers is one, who undertakes for hire to carry all persons indifferently who may apply for passage. It is not essential that the fare should be paid in advance or tendered, to establish the relation and reciprocal duties and liabilities of carrier and passenger; it is enough that it is understood, that it is to be j)aid.
To constitute one a common . carrier, it is necessary that he should hold himself out to the community as such. This may be done, “not only by advertising, &c., but,” by actually “ engaging in the business and pursuing the occupation as an employment. ■ It is not, however, every carrying of passengers for hire that constitutes a party a common carrier. A party having the conveni- *226 enees for carrying persons, may in some, or perhaps in many cases carry passengers for hire, when done at the nstance of the passengers and for their accommodation, without incurring the responsibilities of common carriers.”
These would be private carriers, and be held accountable under rules much less stringent. When a railroad company engage in the business of common carriers, they undertake that the road is in good traveling order and fit for use; and that the engines and carriages employed are road-worthy, and properly constructed and furnished according to the present state of the art, and if an injury results from the imperfection of the road, the carriages or the engines, the company are liable unless the imperfection was of a character in no degree attributable to their negligence. They are also hound for a due application. on the part of their servants and agents of the necessary attention, art, and skill, and if the injury to the plaintiff might have been avoided by the utmost degree of care and skill on the part of the agents and servants of the company they are liable.” He further charges, “that if the injury occurred by running faster than a prudent, skillful conductor would have run on that part of the road, or on account of coming in collision with an obstruction which the conductor saw, or might have seen if he had been looking in a proper direction, or which he might have avoided by the most skillful and prompt use of ail the means in his power, the defendant would be liable.”
In this charge we see no error, and the jury having found the defendant liable as common carriers, under a correct exposition of the law in reference to the facts, *227 we cannot disturb tbeir verdict, although we might differ with them in our conclusions upon the facts.
It is, however, urged that the charge is not full enough, although it is correct as far as it goes. We have several times announced the rule, that we will not reverse on this ground, where there is no application for the extension of the charge. The corn’t must he put in the wrong by charging what is not law, or refusing upon request to charge the whole law, applicable to the facts of the case.
It is again insisted that the court erred, on questions of evidence. He permitted the plaintiff to prove that the engineer in charge of the engine on that day, was heard to say either before or after the accident, “that he would make his engine make her time, or blow her to hell.” This remark was made by one of the agents of the company in connection with his employment, and might be a circumstance to show his rashness or unfitness for so important a position, and tends to prove the cause of the disaster. Whenever it is admissible to prove what an agent did, it is competent to prove what he said about the act while he was doing it. 1 Greenl,, 213.
We cannot say that it was an improper circumstance to go to the jury, nor that they permitted it to have an undue influence upon their minds as has been argued. Again, it is objected that the court refused to permit the defendant to prove the account given by the engineer to his chief in half an hour afterwards, of the manner and cause of the accident. This was not a part of the res gesta, and therefore incompetent.
The judgment will be affirmed.